1  John J. Nelson (SBN 317598)
2  **MILBERG COLEMAN BRYSON**
   **PHILLIPS GROSSMAN, PLLC**
3  280 South Beverly Drive
   Beverly Hills, California 90212
4  Tel.:    (858) 209-6941
   Email: jnelson@milberg.com
5
   *Attorneys for Plaintiffs*
6  *Additional Counsel on Signature Page*
7
8
9              **UNITED STATES DISTRICT COURT**
10        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11 | Brent Carey and Benjamin D. Zeigler,          | Case No.:
12 | individually and on behalf of themselves and all |
   | others similarly situated,                    | **CLASS ACTION COMPLAINT FOR:**
13 |                                               |
   |                         Plaintiffs,           |   1.   **NEGLIGENCE;**
14 |                                               |
   |         vs.                                   |   2.   **VIOLATION OF THE**
15 |                                               |        **FRAUDULENT, UNLAWFUL, AND**
   |                                               |        **UNFAIR PRONGS OF THE UCL;**
16 | Wells Fargo Bank N.A.,                         |        **and**
17 |                                               |   3.   **VIOLATION OF CALIFORNIA'S**
   |                         Defendant.            |        **CONSUMER PRIVACY ACT;**
18 |                                               |
19 |                                               | **JURY TRIAL DEMANDED**
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

Plaintiffs BRENT CAREY and BENJAMIN D. ZEIGLER (the "Plaintiffs") bring this Class Action Complaint (the "Action") against Defendant WELLS FARGO BANK N.A. ("Defendant" or "Wells Fargo") and alleges upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of counsel as follows:

## NATURE OF THE ACTION

1.      This Class Action arises out of the December 31, 2021 exfiltration of consumer data by a former employee at one of the largest banks in the United States, Wells Fargo (hereinafter, the "Data Breach").[1]

2.      Wells Fargo failed to reasonably secure and maintain personally identifiable information provided and entrusted to it by consumers, inclusive of Plaintiffs and the members of the Class – this PII includes consumers' names, addresses, phone numbers, email addresses, dates of birth, and Social Security numbers (collectively, the "PII").[2]

3.      Wells Fargo, which has suffered multiple data breaches over the past year alone, has not been entirely transparent or is woefully uninformed about the specifics of the Data Breach. Wells Fargo either does not know or does not disclose the following critical information related to the Data Breach: (1) how the breach occurred (specifically, how the former Wells Fargo employee was able to gain access to files containing PII); (2) what remedial steps were taken to secure Wells Fargo's networks to prevent future data breaches; (3) whether the files were recovered from the former Wells Fargo employee; and (4) when Wells Fargo discovered that the PII related to the Data Breach was stolen by the former Wells Fargo employee. To compound matters, Wells Fargo failed to communicate to victims that a Data Breach had occurred for over five months from when the former Wells Fargo employee committed the theft of the PII at-issue.

---

[1] Wells Fargo, which is headquartered in San Francisco, California and has major branch offices in Charlotte, North Carolina and New York, New York, services consumers across the entirety of the United States.
[2] Notice of Data Breach letter: https://oag.ca.gov/system/files/421286_final_redacted.pdf. ("Notice")

CLASS ACTION COMPLAINT

4. Consequently, Plaintiffs and members of the Class suffered present injury and damages including identity theft, loss of value of their PII, out-of-pocket expenses and the value of their time reasonably incurred to mitigate, combat, or remedy the effects of the unauthorized access and exfiltration of their highly sensitive and personal information.

5. By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiffs and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant's conduct in breaching these duties amounts to negligence and/or recklessness and violates federal and state statutes.

6. Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to take reasonable steps to protect that PII and to warn Plaintiffs and Class Members of Defendant's inadequate information security practices. Defendant disregarded the rights of Plaintiffs and Class Members by knowingly failing to implement and maintain adequate and reasonable measures to ensure that their PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of PII, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, especially for internal use.

7. As a direct and proximate result of Defendant's data security failures and the Data Breach, the PII of Plaintiffs and Class Members was compromised, and Plaintiffs and Class Members have suffered actual, present, concrete injuries. These injuries include: (i) the current and imminent risk of fraud and identity theft  (ii) lost or diminished value of PII ; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available

CLASS ACTION COMPLAINT

for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII; (vi)  the invasion of privacy; (vii) the compromise, disclosure, theft, and unauthorized use of Plaintiffs' and the Class Members' PII; and (viii) emotional distress, fear, anxiety, nuisance and annoyance related to the theft and compromise of their PII.

8.     Plaintiffs and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and remains at risk due to Defendant's inadequate data security practices and failure to properly train and monitor its employees.

9.     Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

10.     This Court has jurisdiction pursuant to the Class Action Fairness Act because: (1) at least one putative Class Member is a resident of a different state than Defendant's domicile or place of incorporation (namely, Plaintiff Carey is a South Carolina resident whereas Defendant's principal place of business is located in California); (2) there are thousands of putative Class Members; and (3) the amount-in-controversy exceeds $5,000,000.

11.     Personal jurisdiction is appropriate over Defendant because Wells Fargo transacts, directs, and maintains business in California, and because Wells Fargo maintains consumer relationships with California consumers via Wells Fargo's numerous branch locations in California – which means, collectively, that Wells Fargo maintains a systematic and continuous presence in California.

CLASS ACTION COMPLAINT

12.     Venue is proper in the Northern District of California because Wells Fargo maintains corporate offices in this District, and a substantial part of the acts or omissions complained of herein occurred in this District

13.     This Action is properly assigned to the San Francisco Division of this District pursuant to N.D. Cal. L.R. 3-2, because Defendant maintains corporate offices in San Francisco, which is served by the San Francisco Division of this District.

## **PARTIES**

*Plaintiff Brent Carey*

14.     Plaintiff Carey is, and at all relevant times has been, a resident and citizen of the state of South Carolina.

15.     Plaintiff received a Notice of Data Breach letter on May 6, 2022, which informed him that there was an "incident that may affect the security of [his] personal information." According to Wells Fargo, the type of data at issue included Plaintiff's name, address, phone number, email address, date of birth, and Social Security number – however, Defendant prefaced this information with the statement that the information "impacted from person to person." Defendant asked Plaintiff to sign up for credit monitoring services – implying that the PII at issue is not only at risk of being exposed, but used to commit identity theft and financial fraud.

16.     Defendant obtained and continues to maintain Plaintiff's and Class Members' PII and has a continuing legal duty and obligation to protect that sensitive information from unauthorized access and disclosure. Defendant required that Plaintiff provide and entrust to it his PII as a condition of receiving financial services. Plaintiff would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed to an unauthorized party as a result of the Data Breach.

CLASS ACTION COMPLAINT

*Plaintiff Benjamin D. Zeigler*

17.    Plaintiff Zeigler is, and at all relevant times has been, a resident and citizen of the state of California.

18.    Plaintiff received a Notice of Data Breach letter on May 6, 2022, which informed him that there was an "incident that may affect the security of [his] personal information." According to Wells Fargo, the type of data at issue included Plaintiff's name, address, phone number, email address, date of birth, and Social Security number – however, Defendant prefaced this information with the statement that the information "impacted from person to person." Defendant asked Plaintiff to sign up for credit monitoring services – implying that the PII at issue is not only at risk of being exposed, but used to commit identity theft and financial fraud.

19.    Defendant obtained and continues to maintain Plaintiff's and Class Members' PII and has a continuing legal duty and obligation to protect that sensitive information from unauthorized access and disclosure. Defendant required that Plaintiff provide and entrust to it his PII as a condition of receiving financial services. Plaintiff would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed to an unauthorized party as a result of the Data Breach.

*The Wells Fargo Defendants*

*Defendant Wells Fargo Bank N.A.*

20.    Defendant Wells Fargo Bank N.A. is a nationally chartered bank with its principal place of business located at 420 Montgomery Street, San Francisco, California.

## **FACTUAL ALLEGATIONS**

*Wells Fargo's Business*

21.    According to Wells Fargo's 2021 Annual Report filed with the Securities and Exchange Commission, Wells Fargo is:

CLASS ACTION COMPLAINT

[Wells Fargo is] a leading financial services company that provides a diversified set of banking, investment and mortgage products and services, as well as consumer and commercial finance, through banking locations and offices, the internet (www.wellsfargo.com) and other distribution channels to individuals, businesses and institutions in all 50 states, the District of Columbia and in countries outside the U.S. We provide consumer financial products and services including checking and savings accounts, credit and debit cards, and auto, mortgage and home equity, and small business lending. In addition, we offer financial planning, private banking, investment management, and fiduciary services. We also provide financial solutions to businesses through products and services including traditional commercial loans and lines of credit, letters of credit, asset- based lending, trade financing, treasury management, and investment banking services.[3]

22.    On Wells Fargo's website (wellsfargo.com), Defendant publishes its privacy policies.[4] One such policy, the Wells Fargo U.S. Consumer Privacy Notice, describes what Wells Fargo does with the PII that Defendant collects from consumers.[5] Under a subheading on the Wells Fargo U.S. Consumer Privacy Notice, Wells Fargo states, "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[6]

23.    However, with respect to the Data Breach alleged herein, Wells Fargo failed to comply with federal law and failed to use adequate security measures to protect PII from unauthorized access and use. Had Defendant used proper "computer safeguards and secured files"

---

[3] Wells Fargo & Company, S.E.C. Form 10-k (2021), at https://www.wellsfargo.com/about/investor-relations/filings/.
[4] https://www.wellsfargo.com/privacy-security/, (last accessed Aug. 2, 2022).
[5] https://www.wellsfargo.com/privacy-security/individuals/, (last accessed Aug. 2, 2022).
[6] *Id.*

7

this Data Breach would have been prevented and no intelligible data would have been exfiltrated from Wells Fargo's custody.

24.     Plaintiffs and members of the putative Class are currently or were formerly clients of Defendant whose PII was required to be provided, and was in fact provided, to Defendant in conjunction with the banking and financial services that Defendant offers as part of its regular business activities. Plaintiffs and Class Members were required to fill out loan applications, credit authorizations, and other forms associated with the banking services that Defendant provides and which demanded consumers' PII as a precondition.

25.     Plaintiffs and members of the putative Class, as current or former consumers of Defendant, reasonably relied (directly or indirectly) on this highly sophisticated financial institution to keep their sensitive PII confidential; to maintain its system security; to use this information for business purposes only; and to make only authorized disclosures of their PII.

26.     Wells Fargo had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from unauthorized disclosure to third parties.

*The Data Breach*

27.     In May of 2022, Wells Fargo began notifying Class Members and state AGs about the widespread data breach of its computer systems involving the sensitive PII of consumers. According to Wells Fargo, the breach occurred five months earlier, on December 31, 2021.

28.     According to its Notice letters:

On December 31, 2021, a Wells Fargo employee emailed an encrypted file to his personal email address. The file contained your personal information. As soon as we became aware of the incident, we began our internal investigation process to identify the information impacted and the individuals to whom that information belongs. The employee no longer works for Wells Fargo.

29.     Subsequently, Wells Fargo informed victims of the Data Breach that the information compromised includes: names, addresses, phone numbers, email addresses, dates of birth, and Social Security numbers.

CLASS ACTION COMPLAINT

30.     Wells Fargo either does not know or does not disclose the following critical information related to the Data Breach: (1) how the breach occurred (specifically, how the former Wells Fargo employee was able to gain access to unencrypted files containing PII); (2) what remedial steps were taken to secure Wells Fargo's networks to prevent future data breaches; (3) whether the files were recovered from the former Wells Fargo employee; and (4) when Wells Fargo discovered that the PII related to the Data Breach was stolen by the former Wells Fargo employee. To compound matters, Wells Fargo failed to communicate that a breach had occurred for over five months from the date when the former Wells Fargo employee committed the theft of the PII at-issue and from when Wells Fargo discovered the Data Breach.

31.     As evidenced by the fact that an employee could access and exfiltrate the PII, the PII was not encrypted prior to the data breach and Wells Fargo did not have sufficient safeguards in place to immediately detect and prevent the unauthorized exfiltration of Plaintiffs' and Class Members' PII from its systems.

32.     The Notice also states that Wells Fargo is offering victims of the Data Breach two-years of identity theft detection from Experian IdentityWorks. With its offer of credit and identity monitoring services, Wells Fargo is acknowledging that the impacted persons are subject to an imminent threat of identity theft and financial fraud. The Notice includes a page that gives advice to victims on "Tips to Protect Your Personal Information," further evidencing Wells Fargo's understanding of the consequences likely to result from the Data Breach.

33.     Wells Fargo had obligations created by contract, industry standards, common law, and representations made to its customers, including Plaintiffs and Class Members, to keep their PII that was entrusted to Wells Fargo confidential and to protect the PII from unauthorized access, exfiltration, and disclosure.

34.     Plaintiffs and Class Members provided their PII to Wells Fargo with the reasonable expectation that Wells Fargo as a bank/financial services firm would comply with its duty and

9

obligations and representations to keep such information confidential and secure from unauthorized access.

35.   Plaintiffs and Class Members provided their PII to Wells Fargo and Wells Fargo accepted the PII with the mutual understanding that Wells Fargo would employ reasonable security practices and adequately monitor its employees to prevent the unauthorized access, exfiltration, and disclosure of their PII

36.   Wells Fargo failed to uphold its data security obligations to Plaintiffs and Class Members. As a result, Plaintiffs and Class Members are significantly harmed and will be at a high risk of identity theft and financial fraud for many years to come.

37.   Wells Fargo did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining, causing Plaintiff's and Class Members' PII to be exposed.

*Securing PII and Preventing Breaches*

38.   Wells Fargo could have prevented this Data Breach by properly encrypting or otherwise protecting their equipment and computer files containing PII. Wells Fargo could also have prevented and/or timely detected this Data Breach by properly monitoring its employees, their access unencrypted PII, and by monitoring their email and communication systems for suspicious activity.

39.   To be sure, collection, maintaining, and protecting PII is vital to virtually all of Wells Fargo's business purposes as a bank/financial services firm. Wells Fargo acknowledged through its conduct and statements that the misuse or inadvertent disclosure of PII can pose major privacy and financial risks to impacted individuals, and that under state law they may not disclose and must take reasonable steps to protect PII from improper release or disclosure.

CLASS ACTION COMPLAINT

*The Data Breach Was A Foreseeable Risk of Which Defendant Was On Notice*

40.     It is well known that PII, including Social Security numbers and financial account information in particular, is an invaluable commodity and a frequent target of hackers. It is further well known that employees may intentionally or inadvertently disclose PII. In 2012 a disgruntled employee of EnerVest Operating, LLC locked the company's IT infrastructure and prevented access to the network.[7] In 2020, Shopify reported a data breach involving the theft of PII from 200 of its merchants by two of its employees who "were engaged in a scheme to obtain customer transactional records of certain merchants."[8] In Similarly, former Twitter employee was recently convicted of providing a foreign government with the "email addresses, phone numbers and other private data of people who had used Twitter to anonymously criticize Saudi Arabia."[9]

41.     Data breaches in and of themselves are a known threat to sophisticated companies like Wells Fargo. In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[10]

42.     Of the 1,473 recorded data breaches, 108 of them were in the banking/credit/financial industry, with the number of sensitive records being exposed exceeding 100 million. In fact, over 62% of the 164 million sensitive records exposed in data breaches in 2019 were exposed in those 108 breaches in the banking/credit/financial sector.[11]

43.     The 108 reported financial sector data breaches reported in 2019 exposed 100,621,770 sensitive records, compared to 2018 in which only 1,778,658 sensitive records were exposed in financial sector breaches.[12]

---

[7] https://www.justice.gov/usao-sdwv/pr/enervest-computer-attack-draws-four-year-federal-sentence
[8] https://community.shopify.com/c/shopify-discussions/incident-update/m-p/888971
[9] https://www.forbes.com/sites/joewalsh/2022/08/09/ex-twitter-employee-convicted-of-sending-private-data-to-saudi-government/?sh=14770382d062
[10] https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf (last accessed December 10, 2021)
[11] *Id*.
[12] *Id* at p. 15.

CLASS ACTION COMPLAINT

44.     Individuals place a high value not only on their PII, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

45.     Individuals are particularly concerned with protecting the privacy of their social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers." There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiffs and Class Members cannot obtain new numbers unless they become a victim of Social Security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."

46.     In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), and, in light of the recent data breaches Wells Fargo has suffered, Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

47.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

48.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite their own acknowledgment of its duties to keep PII private and secure, Wells Fargo failed to take appropriate steps to protect the PII of Plaintiffs and the proposed Class from being compromised.

CLASS ACTION COMPLAINT

*Wells Fargo Had A Duty to Plaintiffs and Class Members to Secure Their PII*

49.     At all relevant times, Defendant had a duty to Plaintiffs and Class Members to properly secure their PII, encrypt and maintain such information using industry standard methods, train and monitor its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiffs and Class Members, and to *promptly* notify Plaintiffs and Class Members when Wells Fargo became aware that their PII may have been compromised. Instead, Defendant did not notify victims until over five months after the Data Breach first occurred.

50.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiffs and the Class Members, on the other hand. The special relationship arose because Plaintiffs and the Members of the Class entrusted Defendant with their PII when they entrusted Wells Fargo to provide banking and financial services.

51.     Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiffs and Class Members.

52.     Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

a.     Maintaining a secure firewall configuration;

b.     Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

c.     Monitoring for suspicious or irregular traffic to servers;

d.     Monitoring for suspicious credentials used to access servers;

e.     Monitoring for suspicious or irregular activity by known users;

CLASS ACTION COMPLAINT

f.      Monitoring for suspicious or unknown users;

g.      Monitoring for suspicious or irregular server requests;

h.      Monitoring for server requests for PII;

i.      Monitoring for server requests from VPNs; and

j.      Monitoring for server requests from Tor exit nodes.

53.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[14]

54.     The ramifications of Defendant's failure to keep its consumers' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims is likely to continue for years.

*The Value of Personally Identifiable Information*

55.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[15] According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240,

---

[13] 17 C.F.R. § 248.201 (2013).
[14] *Id.*
[15] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed December 10, 2021).

CLASS ACTION COMPLAINT

stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[16]

56.    As a growing number of federal courts have begun to recognize the Loss of Value of PII as a viable damages theory, the sale of PII from data breaches, as in the Data Breach alleged herein, is particularly harmful to data breach victims – especially when it takes place on the dark web.

57.    Plaintiffs and Class Members' PII is a valuable commodity, a market exists for Plaintiffs and Class Members' PII (which is why the Data Breach was perpetrated in the first place), and Plaintiffs and Class Members' PII is being likely being sold by hackers on the dark web (as that is the *modus operandi* of data thieves) – as a result, Plaintiffs and Class Members have lost the value of their PII, which is sufficient to plausibly allege injury arising from a data breach.

58.    The PII stolen in this specific Data Breach was particularly harmful.

59.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[17]

---

[16] *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, *available at*: https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed December 10, 2021).

[17] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed December 10, 2021).

60.     Furthermore, trying to change or cancel a stolen Social Security number is no minor task. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

61.     Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[18]

62.     This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[19]

63.     PII can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[20]

64.     Given the nature of Defendant's Data Breach, as well as the long delay in notification to Class Members, it is foreseeable that the compromised PII has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiffs' and Class Members' PII can easily obtain Plaintiff's and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

---

[18]     Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed December 10, 2021).
[19]     Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed December 10, 2021).
[20] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

CLASS ACTION COMPLAINT

65.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[21] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

66.     To date, Defendant has offered its consumers *only two years* of identity monitoring services. The offered services are inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

67.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former customers.

*Wells Fargo Failed to Comply with FTC Guidelines*

68.     Federal and State governments have established security standards and issued recommendations to lessen the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[22]

69.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[23] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer

---

[21] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, *available at*: https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed December 10, 2021).

[22] Federal Trade Commission, *Start With Security, available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed December 10, 2021).

[23] Federal Trade Commission, *Protecting Personal Information: A Guide for Business, available at*: https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed December 10, 2021).

CLASS ACTION COMPLAINT

needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

70.     The FTC recommends that companies verify that third-party service providers have implemented reasonable security measures.[24]

71.     The FTC recommends that businesses:

a.     Identify all connections to the computers where you store sensitive information.

b.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c.     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.     Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

f.     Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g.     Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a

---

[24] FTC, *Start with Security*, *supra* note 34.

CLASS ACTION COMPLAINT

computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.   Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.   Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

72.   The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

73.   Because Class Members entrusted Wells Fargo with their PII, Wells Fargo had, and has, a duty to the Class Members to keep their PII secure.

74.   Plaintiffs and the other Class Members reasonably expected that when they provide PII to banks/financial service firms like, Wells Fargo, they will safeguard their PII.

75.   Wells Fargo was at all times fully aware of its obligation to protect the personal and financial data of consumers, including Plaintiffs and members of the Class. Wells Fargo was also aware of the significant repercussions if it failed to do so.

76.   Wells Fargo's failure to employ reasonable and appropriate measures to protect

CLASS ACTION COMPLAINT

against unauthorized access to, and exfiltration of, confidential consumer data—including Plaintiffs' and Class Members' full names, Social Security numbers, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

*Defendant Failed to Comply with the Gramm-Leach-Bliley Act*

77.     Defendant runs bank and provides financial services for consumers and is therefore subject to the Gramm-Leach-Bliley Act ("GLBA").

78.     Defendant collects nonpublic personal information, as defined by 15 U.S.C. § 6809(4)(A), 16 C.F.R. § 313.3(n) and 12 C.F.R. § 1016.3(p)(1). Accordingly, during the relevant time period Defendant was subject to the requirements of the GLBA, 15 U.S.C. §§ 6801.1 et seq., and is subject to numerous rules and regulations promulgated on the GLBA Statutes. The GLBA Privacy Rule became effective on July 1, 2001. *See* 16 C.F.R. Part 313. Since the enactment of the Dodd-Frank Act on July 21, 2010, the Consumer Financial Protection Bureau ("CFPB") became responsible for implementing the Privacy Rule. In December 2011, the CFPB restated the implementing regulations in an interim final rule that established the Privacy of Consumer Financial Information, Regulation P, 12 C.F.R. § 1016 ("Regulation P"), with the final version becoming effective on October 28, 2014.

79.     Accordingly, Defendant's conduct is governed by the Privacy Rule prior to December 30, 2011, and by Regulation P after that date.

80.     Both the Privacy Rule and Regulation P require financial institutions to provide customers with an initial and annual privacy notice. These privacy notices must be "clear and conspicuous."16 C.F.R. §§ 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. "Clear and conspicuous means that a notice is reasonably understandable and designed to call attention to the nature and significance of the information in the notice." 16 C.F.R. § 313.3(b)(1); 12 C.F.R. § 1016.3(b)(1). These privacy notices must "accurately reflect[] [the financial institution's] privacy policies and practices." 16 C.F.R. § 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. They must include specified elements, including the categories of nonpublic personal information the financial institution collects and discloses, the categories of third parties to whom the financial institution

CLASS ACTION COMPLAINT

discloses the information, and the financial institution's security and confidentiality policies and practices for nonpublic personal information. 16 C.F.R. § 313.6; 12 C.F.R. § 1016.6. These privacy notices must be provided "so that each consumer can reasonably be expected to receive actual notice." 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. As alleged herein, Defendant violated the Privacy Rule and Regulation P.

81.     The Safeguards Rule, which implements Section 501(b) of the GLBA,15 U.S.C. § 6801(b), requires institutions to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards, including: (1) designating one or more employees to coordinate the information security program; (2) identifying reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information, and assessing the sufficiency of any safeguards in place to control those risks; (3) designing and implementing information safeguards to control the risks identified through risk assessment, and regularly testing or otherwise monitoring the effectiveness of the safeguards' key controls, systems, and procedures; (4) overseeing service providers and requiring them by contract to protect the security and confidentiality of customer information; and (5) evaluating and adjusting the information security program in light of the results of testing and monitoring, changes to the business operation, and other relevant circumstances. 16 C.F.R. §§ 314.3 and 314.4. As alleged herein, Defendant violated the Safeguard Rule.

82.     Defendant failed to assess reasonably foreseeable risks to the security, confidentiality, and integrity of PII in its custody or control.

83.     Defendant failed to design and implement information safeguards to control the risks identified through risk assessment, and regularly test or otherwise monitor the effectiveness of the safeguards' key controls, systems, and procedures.

84.     Defendant failed to evaluate and adjust its information security program in light of

the results of testing and monitoring, changes to the business operation, and other relevant circumstances.

*Plaintiff Carey's Experience*

85.     Plaintiff was required to provide and did provide his PII to Defendant during his banking relationship with Defendant.

86.     To date, Defendant has done next to nothing to adequately protect Plaintiff and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly given the fact that the unencrypted PII has already been exfiltrated and likely made available to anyone wishing to download it.

87.     Defendant's data breach notice letter downplays the theft of Plaintiff's and Class Members PII, when the facts demonstrate that the PII was deliberately exfiltrated in a criminal action. The fraud and identity monitoring services offered by Defendant are only for two years, and Defendant places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for the service and addressing timely issues resulting from the Data Breach.

88.     Plaintiff and Class Members have been further damaged by the compromise of their PII.

89.     Plaintiff's PII was compromised in the Data Breach and was likely stolen and in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

90.     Indeed, Plaintiff Carey has noticed attempted phishing and/or fraud attempts increase since the onset of the data breach.

91.     Plaintiff typically takes measures to protect his PII and is very careful about sharing his PII. Plaintiff has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

92.     Plaintiff stores any documents containing his PII in a safe and secure location, and he

CLASS ACTION COMPLAINT

diligently chooses unique usernames and passwords for his online accounts.

93.     As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff has spent significant time monitoring his accounts and credit score and has sustained emotional distress in addition to his lost time. This is time that was lost and unproductive and took away from other activities and duties.

94.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

95.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

96.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security Number, being placed in the hands of criminals.

97.     Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff when he received services from Defendant. Plaintiff, however, would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

98.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

*Plaintiff Ziegler's Experience*

99.     Plaintiff was required to provide and did provide his PII to Defendant during his

banking relationship with Defendant.

100.    To date, Defendant has done next to nothing to adequately protect Plaintiff and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly given the fact that the unencrypted PII has already been exfiltrated and likely made available to anyone wishing to download it.

101.    Defendant's data breach notice letter downplays the theft of Plaintiff's and Class Members PII, when the facts demonstrate that the PII was deliberately exfiltrated in a criminal action. The fraud and identity monitoring services offered by Defendant are only for two years, and Defendant places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for the service and addressing timely issues resulting from the Data Breach.

102.    Plaintiff has noticed an uptick in email spam and scam attempts since the Data Breach occurred.

103.    Plaintiff and Class Members have been further damaged by the compromise of their PII.

104.    Plaintiff's PII was compromised in the Data Breach and was likely stolen and in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

105.    Plaintiff typically takes measures to protect his PII and is very careful about sharing his PII. Plaintiff has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

106.    Plaintiff stores any documents containing his PII in a safe and secure location, and he diligently chooses unique usernames and passwords for his online accounts.

107.    As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff has spent significant time monitoring his accounts and credit score and

has sustained emotional distress in addition to his lost time. This is time that was lost and unproductive and took away from other activities and duties.

108.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

109.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

110.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security Number, being placed in the hands of criminals.

111.     Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff when he received services from Defendant. Plaintiff, however, would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

112.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ALLEGATIONS

113.     Plaintiffs bring this suit on behalf of themselves and a class of similarly situated individuals under Federal Rule of Civil Procedure 23, which is preliminarily defined as:

> All persons Defendant has identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class").

114.    Plaintiff Zeigler also seeks to represent a California Subclass defined as:

All persons who reside in California and who Defendant has identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Subclass").

115.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

116.    Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, public news reports indicate that hundreds, if not thousands, of individuals had their PII compromised in this Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

117.    Commonality. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    i.   Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII;

    ii.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    iii.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    iv.   Whether Defendant's data security systems prior to and during the Data

Breach were consistent with industry standards;

    v.   Whether Defendant owed a duty to Class Members to safeguard their PII;

    vi.   Whether Defendant breached its duty to Class Members to safeguard their PII;

    vii.   Whether Class Members' unencrypted PII was exfiltrated in the Data Breach;

    viii.   Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

    ix.   Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

    x.   Whether Defendant's conduct was negligent;

    xi.   Whether Defendant's conduct was *per se* negligent, and;

    xii.   Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

118.    Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class member, was compromised in the Data Breach.

119.    Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

120.    Predominance. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

121.    Superiority. A Class action is superior to other available methods for the fair and

CLASS ACTION COMPLAINT

efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

122.   Defendant has acted on grounds that apply generally to the Classes as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

123.   Likewise, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    i.   Whether Defendant owed a legal duty to Plaintiff and the Classes to exercise due care in collecting, storing, and safeguarding their PII;

    ii.   Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    iii.   Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

    iv.   Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

    v.   Whether adherence to FTC data security recommendations, and measures

recommended by data security experts would have reasonably prevented the data breach.

124.    Finally, all members of the proposed Classes are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On behalf of Plaintiffs and the Class)

125.    Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in the paragraphs above and below.

126.    Plaintiffs bring this Count on behalf of themselves and the nationwide Class.

127.    Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

128.    Plaintiffs and Class Members had a special relationship in that Defendant's collection and maintenance of Plaintiffs' and Class Members' PII was intended to benefit the Class, the resulting harm from the Data Breach was foreseeable, Plaintiffs injuries resulting from Defendant's failure to safeguard their PII are actual, immediate, and certain and Defendant's failure to safeguard PII is morally unjustifiable and offends public policy.

129.    Defendant had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII.

130.    Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if the PII were wrongfully disclosed.

131.     By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

132.     The existence of Defendant's duty of care with respect to PII is consistent with California's statutorily recognized public policy of preventing identity theft and protecting the confidentiality of PII.

133.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

134.     Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

135.     Defendant's duty to use reasonable security measures also arose under the GLBA, under which Defendant was required to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards.

136.     Defendant's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

CLASS ACTION COMPLAINT

137.    Defendant's violation of the GLBA and its Safeguards Rule constitutes negligence per se.

138.    Class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes), and the GLBA, were intended to protect.

139.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and Class Members. The GLBA, with its Safeguards Rule, was similarly intended.

140.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within Defendant's possession.

141.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

142.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

143.    Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

144.    As a result of Defendant's ongoing failure to notify Plaintiffs and Class Members regarding the type of PII has been compromised, Plaintiffs and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

145.   Defendant's breaches of duty caused Plaintiffs and Class Members to suffer from identity theft, loss of time and money to monitor their finances for fraud, and loss of control over their PII.

146.   As a result of Defendant's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes.

147.   As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

148.   Plaintiffs seek the award of actual damages on behalf of themselves and the Class.

149.   In failing to secure Plaintiffs' and Class Members' PII and promptly notifying them of the Data Breach, Defendant is guilty of oppression, fraud, or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiffs' and Class Members' rights. Plaintiffs, therefore, in addition to seeking actual damages, seeks punitive damages on behalf of themselves and the Class.

CLASS ACTION COMPLAINT

150.    Plaintiffs seeks injunctive relief on behalf of the Class in the form of an order compelling Defendant to institute appropriate data collection and safeguarding methods and policies with regard to consumer information.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (On behalf of Plaintiffs and the Class)

151.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

152.    Plaintiffs bring this Count on behalf of themselves and the nationwide Class.

153.    Defendant maintains its principal place of business and corporate offices in San Fransisco, California and the acts and omissions with respect to the practices alleged herein were directed and emanated from California.

154.    The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the UCL.

155.    In the course of conducting their business, Defendant committed "unlawful" business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs and Class members' PII, and by violating the statutory and common law alleged herein, including, *inter alia*, the FTC Act, GLBA, California Consumer Privacy Act of 2018 (Cal. Civ. Code §§ 1798.100, *et seq*.) and Article I, Section 1 of the California Constitution (California's constitutional right to privacy) and Civil Code § 1798.81.5. Plaintiffs and Class members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. Defendant's

33

above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

156. Defendant also violated the UCL's unlawful prong by breaching contractual obligations created by their Privacy Policies and by knowingly and willfully or, in the alternative, negligently and materially violating Cal. Bus. & Prof. Code § 22576, which prohibits a commercial website operator from "knowingly and willfully" or "negligently and materially" failing to comply with the provisions of their posted privacy policy. Plaintiffs and Class members suffered injury in fact and lost money or property as a result of Defendant's violations of their Privacy Policies.

157. Defendant also violated the UCL by failing to timely notify Plaintiffs and Class members pursuant to Civil Code § 1798.82(a) regarding the unauthorized access and disclosure of their PII. If Plaintiff and Class members had been notified in an appropriate fashion, they could have taken precautions to safeguard and protect their PII and identities.

158. Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and unscrupulous. Defendant's practices are also contrary to legislatively declared and public policies that seek to protect PII and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws such as the CCPA, Article I, Section 1 of the California Constitution, and the FTC Act (15 U.S.C. § 45). The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

CLASS ACTION COMPLAINT

159.   The UCL also prohibits any "fraudulent business act or practice." Defendant's above-described claims, nondisclosures and misleading statements were false, misleading and likely to deceive the consuming public in violation of the UCL.

160.   As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and their violations of the UCL, Plaintiffs and Class Members have suffered injury in fact and lost money or property as a result of Defendant's unfair and deceptive conduct. Such injury includes paying for a certain level of security for their PII but receiving a lower level, paying more for Defendant's products and services than they otherwise would have had they known Defendant was not providing the reasonable security represented in their Privacy Policy and as in conformance with their legal obligations. Defendant's security practices have economic value in that reasonable security practices reduce the risk of theft of customer's PII.

161.   Plaintiffs and Class members have also suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII, (iv) statutory damages under the CCPA, (v) deprivation of the value of their PII for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring financial accounts, and mitigating damages.

162.   Plaintiffs and Class members suffered injury in fact and lost money or property as a result of Defendant's unfair and unlawful acts in that a portion of the money Plaintiffs and Class members paid for Defendant's services went to fulfill the contractual obligations set forth in Defendant's Privacy Policy, including maintaining the security of their PII, and Defendant's legal obligations and Defendant failed to fulfill those obligations.

CLASS ACTION COMPLAINT

163.     Plaintiffs and Class members suffered injury in fact and lost money or property as a result of Defendant's violations described herein in that they entrusted their PII to Defendant as a necessary condition of receiving services and they received something of lesser value and the value of their PII was diminished.

164.     Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiffs, therefore, on behalf of themselves, Class members, and the general public, also seek restitution and an injunction, including public injunctive relief prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to modify their corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the PII entrusted to it, as well as all other relief the Court deems appropriate, consistent with Bus. & Prof. Code § 17203.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S CONSUMER PRIVACY ACT**
**(On behalf of Plaintiff Zeigler and the California Subclass)**

165.     Plaintiff Zeigler ("Plaintiff" for the purposes of this Count) realleges and incorporates by reference all proceeding paragraphs as if fully set forth herein.

166.     Plaintiff brings this Count on his own behalf and that of the California Subclass.

167.     As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access and disclosure. The California Legislature explained: "The unauthorized disclosure of personal information and the loss of privacy can have devasting effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time

CLASS ACTION COMPLAINT

and finances, to destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm."[25]

168.   As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendant failed to implement such procedures which resulted in the Data Breach.

169.   Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

170.   Plaintiffs and the Class members are "consumer[s]" as defined by Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

171.   Defendant is a "business" as defined by Civ. Code § 1798.140(c) because Defendant:

i.   is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners";

---

[25]   California Consumer Privacy Act (CCPA) Compliance, https://buyergenomics.com/ccpa-complience/.

  ii. "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information";

  iii. does business in California; and

  iv. has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

172. The PII taken in the Data Breach is personal information as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains at least Plaintiffs' and the Class members' unencrypted names, addresses, phone numbers, email addresses, dates of birth, and Social Security numbers

173. Plaintiffs and the Class' unencrypted PII were subject to unauthorized access and exfiltration, theft, or disclosure because their PII was wrongfully taken, accessed, and viewed by unauthorized third parties.

174. The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiffs' and the Class members' PII. Defendant failed to implement reasonable security procedures to prevent an attack on their server or network, including its email system, by hackers and to prevent unauthorized access of Plaintiffs and the Class members' PII as a result of this attack.

175. Plaintiff Zeigler provided Defendant with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). As Defendant has not cured the violations or provided a written response within 30 days from its receipt thereof, Plaintiff seeks all relief available under the CCPA including damages to be measured as the greater of actual damages or

CLASS ACTION COMPLAINT

statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident.  *See* Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

176.    As a result of Defendant's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, including its failure to encrypt the PII, Plaintiff seeks injunctive relief, including public injunctive relief, declaratory relief, and any other relief as deemed appropriate by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes defined herein, pray for judgment as against Defendant as follows:

A.  For an Order certifying this action as a Class action and appointing Plaintiffs and their counsel to represent the Classes;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class members;

C.  For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Breach;

D.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.  Ordering Defendant to pay for not less than three years of credit monitoring services for Plaintiffs and the Classes;

F.  For an award of actual damages, compensatory damages, statutory damages and statutory penalties, in an amount to be determined, as allowable by law;

G.  For an award of punitive damages, as allowable by law;

CLASS ACTION COMPLAINT

H.  For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.   Pre- and post-judgment interest on any amounts awarded and,

J.   All such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury.

DATED: August 31, 2022                     Respectfully submitted,

                                                            */s/ John Nelson*
                                                            John Nelson (SBN 317598)
                                                            *jnelson@milberg.com*
                                                            MILBERG COLEMAN BRYSON
                                                            PHILLIPS GROSSMAN, PLLC
                                                            280 South Beverly Drive
                                                            Beverly Hills, California 90212
                                                            Tel.:    (858) 209-6941

                                                            Gary M. Klinger*
                                                            MILBERG COLEMAN BRYSON
                                                            PHILLIPS GROSSMAN, PLLC
                                                            227 W. Monroe Street, Suite 2100
                                                            Chicago, IL 60606
                                                            Telephone: 866.252.0878
                                                            gklinger@milberg.com

                                                            David K. Lietz*
                                                            MILBERG COLEMAN BRYSON
                                                            PHILLIPS GROSSMAN, PLLC
                                                            5335 Wisconsin Avenue NW
                                                            Suite 440
                                                            Washington, D.C. 20015-2052
                                                            Telephone: (866) 252-0878
                                                            Facsimile: (202) 686-2877
                                                            dlietz@milberg.com

                                                            Blake Hunter Yagman*
                                                            MILBERG COLEMAN BRYSON
                                                            PHILLIPS GROSSMAN, PLLC
                                                            100 Garden City Plaza, Suite 500
                                                            Garden City, New York 11530
                                                            Telephone: 212-594-5300
                                                            byagman@milberg.com

                                                            *Attorneys for Plaintiffs and the Classes*

                                                            **Pro Hac Vice forthcoming*

CLASS ACTION COMPLAINT